**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

COLEEN A. REMP,                         :
                                        :
              Plaintiff,                :
                                        :   CIVIL ACTION
        v.                              :
                                        :
ALCON LABORATORIES, INC.,               :
                                        :   NO. 13-6407
              Defendant.                :

<u>MEMORANDUM</u>

STENGEL, J.                                             March 24, 2016

On November 1, 2013, the plaintiff, Coleen Remp, filed this employment

discrimination action against her employer, Alcon Laboratories.  Remp brings claims for

sex discrimination, age discrimination and retaliation under Title VII of the Civil Rights

Act of 1964 ("Title VII"), the Age Discrimination in Employment Act ("ADEA") and the

Pennsylvania Human Rights Act ("PHRA").  Remp also alleges a state law claim for

intentional infliction of emotional distress.  For the reasons discussed below, I am

granting the defendant's motion for summary judgment.

**I.     BACKGROUND**

Alcon is a multi-national corporation engaged in the business of discovery,

development, manufacturing and marketing of pharmaceuticals, medical devices and

instruments for the ophthalmic field.  Doc. No. 1[1] ¶¶ 7, 9.  Coleen Remp began working

as a Utility Specialist with Alcon at their Sinking Spring facility in March of 1992.  Id. at

_____
[1] Plaintiff's Complaint.

1

¶ 14.  Throughout the fourteen years that Remp worked with Alcon, she held several different positions.  Id. at ¶ 15.  In 1993, Remp was promoted from Utility Specialist to Purchasing/Planning Clerk and in 1995, Remp was promoted to a Senior Purchasing/Planning Clerk.  Doc. No. 41[2] ¶¶ 9-10.  In 1998, Remp was promoted again to Associate Planner/Buyer and in 2003, she was promoted to her current position, Planner/Buyer.  Id. ¶¶ 12,14.  The planner/buyer position has two functions:  (1) "planning, which entails forecasting manufacturing needs for the facility, and (2) buying, which entails purchasing raw materials for the manufacturing process, executing purchase orders, and interfacing with suppliers."  Doc. No. 38[3], Att. 1 ¶ 23.

At the time of her complaint, four planner/buyers worked at Alcon's Sinking Spring including Remp.  Doc. No. 41 ¶ 15.  Three of the planner/buyers are women over the age of forty and one was a thirty-seven year old male.  Id.  All four of the planner/buyers hold the same labor grade, labor grade 17, which is the highest labor grade that a planner/buyer may hold at Alcon.  Id. ¶ 16.  The thirty-seven year old male planner/buyer, Jeffrey Wolf, is the lowest paid planner/buyer of the four and Remp is the highest paid planner/buyer of the four.  Id. ¶¶ 18, 21.

As a planner/buyer, Remp reports to Kenneth Stevenson, the Materials Manager of the Sinking Spring facility.  Id. ¶ 24.  Stevenson has never issued any form of discipline to Remp.  Id. ¶ 27.  In fact, Stevenson approved the pay increases that Remp has received in each of the past five years.  Id. ¶¶ 28-29.  Moreover, Stevenson has provided Remp

---

[2] Plaintiff's Counter-Statement of Undisputed Material Facts in Opposition to Defendant's Motion for Summary Judgment.
[3] Defendant's Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment.

with several different training and development opportunities including attending conferences and learning the responsibilities of a master production scheduler.  Id. ¶ 32.

On January 8, 2008, an open planner/buyer position was posted on the job board in the workplace and Remp decided to bid on the position since she was qualified for the position.  Doc. No. 1 at ¶ 16.  The posted position involved upward advancement opportunities.  Id. at ¶ 17.  Six months after the position was posted, Remp discovered that Alcon had already hired Wolf who had little experience in the ophthalmic products industry at that point.  Id. at ¶ 18.  Remp has not bid on any other positions at Alcon since her 2008 bid for planner/buyer.  Doc. No. 41 ¶ 75.

On August 8, 2012, Remp learned that Stevenson had selected Wolf for an interim assignment in the Sponge Department, an assignment which was a "career opportunity" for Wolf.  Doc. No. 1 ¶¶ 18, 19.  The assignment required that Wolf temporarily supervise one employee in the sponge department for six months.  Doc. No. 41 at ¶ 47. None of the other planner/buyers were given opportunity to apply for the interim assignment.  Id. at ¶ 48.

On August 9, 2012, the day after she learned that Wolf had received the interim assignment, Remp went directly to Stevenson to speak to him about her concerns that women at Alcon were being discriminated against.  Doc. No. 1 ¶ 22.  In response, Stevenson told her that he did not handle issues regarding discrimination but rather, that William McQueen ("McQueen"), the Human Resources Manager, would be the appropriate party to speak to.  Id. at ¶ 23.   Stevenson brought Remp's discrimination

3

complaints to McQueen's attention and on August 17, 2012, Remp was called into a meeting with Stevenson and McQueen.  Id. at ¶ 26.  According to Remp, the next two hours of the meeting were spent listening to McQueen harass her with threats of discipline, termination and legal action for reporting "defamation" and "talking about discrimination" at Alcon.  Id. at ¶ 27.  On November 26, 2012, Remp filed her EEOC Charge of Discrimination alleging sex discrimination, age discrimination and retaliation.

## II.     LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual dispute is "material" only if it might affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  For an issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party.  Id.

A party seeking summary judgment initially bears responsibility for informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing relevant portions of the record, including depositions, documents, affidavits, or declarations, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c).

Summary judgment is therefore appropriate when the non-moving party fails to rebut the moving party's argument that there is no genuine issue of fact by pointing to evidence that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

Under Rule 56 of the Federal Rules of Civil Procedure, the Court must draw "all justifiable inferences" in favor of the non-moving party. Anderson, 477 U.S. at 255. The Court must decide "not whether. . . .the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Id. at 252. In an employment discrimination case, the court must ascertain "whether. . . there exists sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaint." Hankins v. Temple Univ. (Health Sciences Ctr.), 829 F.2d 437, 440 (3d Cir. 1987). In the context of employment discrimination claims, "conclusory allegations of discrimination, in the absence of particulars, are insufficient to defeat summary judgment." Taylor v. Cherry Hill Bd. of Educ., 85 F. App'x 836, 839 (3d Cir. 2004).

## III. DISCUSSION

Remp brings claims of sex discrimination, age discrimination and retaliation under Title VII, the ADEA and the PHRA. The court will "apply the same analytical framework to discrimination claims brought under the ADEA and PHRA as to those brought pursuant to Title VII." White v. Planned Sec. Services, No. 10-2017, 2011 WL 6258307, at *3 n.5 (E.D. Pa. Dec. 15, 2011)(citing Wishkin v. Potter, 476 F.3d 180, 185

(3d Cir. 2007)).  In cases where the plaintiff lacks direct evidence of discrimination, Title VII, ADEA, and PHRA discrimination claims are subject to the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See Daniels v. Sch. Dist. of Phila., 982 F.Supp.2d 462, 479 (E.D. Pa. 2013)(holding that McDonnell Douglas provides the standard for claims under Title VII, the PHRA, and the ADEA).  Under the McDonnell Douglas burden shifting framework, a plaintiff seeking to establish a *prima facie* case of discrimination must offer sufficient evidence that:  "(1) the plaintiff belongs to a protected class; (2) he/she was qualified for the position; (3) he/she suffered an adverse employment action despite being qualified; and (4) under circumstances that would raise an inference of discriminatory action, the employer continued to seek individuals with qualifications similar to the plaintiff's to fill the position."  Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003)(citing McDonnell Douglas, 411 U.S. at 802).

Once the plaintiff has established a *prima facie* case, the burden of production shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the employee's rejection."  McDonnell Douglas, 411 U.S. at 802.  At this time, the employer must demonstrate "evidence which, taken as true, would permit the conclusion that there was a non-discriminatory reason for the unfavorable employment decision." Fuentes v. Perski, 32 F.3d 759, 763 (3d Cir. 1994).  If the employer is able to satisfy his burden of production, the presumption of discriminatory action raised by the *prima facie* case is rebutted and the burden shifts back to the plaintiff to establish that the employer's

legitimate, non-discriminatory reason was merely pretext for discrimination.  McDonnell Douglas, 411 U.S. at 804.  At the summary judgment stage, the plaintiff can establish pretext by showing some evidence from which a factfinder could reasonably disbelieve the employer's articulated legitimate reasons.  Joyce Milillo v. Thomas Jefferson U. Hospitals, Inc., No. 14-3143, 2015 WL 5964992, *5 (E.D. Pa. Oct. 13, 2015)(citations omitted).

### A.  The Continuing Violations Doctrine

The defendant contends that to the extent Remp alleges any adverse employment actions suffered before January 31, 2012, those actions are time-barred.  In Pennsylvania, Title VII, ADEA and PHRA claims "must be filed with the EEOC or dual-filed with the PHRC within 300 days of the unlawful discriminatory act."  Kelly-Pimental v. Pa. Dept. of Corrections, No. 15-1463, 2016 WL 616586, *1 (W.D. Pa. Feb. 16, 2016)(citing Mandel v. M&O Packaging Corp., 705 F.3d 157, 165 (3d Cir. 2013)).  Here, Remp filed her EEOC Charge on November 26, 2012.  Therefore, a strict application of the timely filing requirements would mean that any adverse employment action occurring before January 31, 2012 would be time-barred.  Effectively, this means that Remp would be barred from bringing a discrimination claim based on her failure to receive the open planner/buyer position in January 2008 in favor of Wolf.

Remp disputes that the timely filing requirements bar consideration of any adverse employment action before January 31, 2012, stating that any pre-January 2012 adverse actions are part of a continuing pattern of discrimination and therefore, should be

considered pursuant to the continuing violation doctrine.   Courts have recognized that like a statute of limitations, the filing of a timely charge is subject to "waiver, estoppel, and equitable tolling."  Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982). One such equitable tolling mechanism is the continuing violations doctrine, which is "premised on the equitable notion that the statute of limitations should not begin to run until a reasonable person would be aware that his or her rights have been violated." Hicks v. Big Bros./Big Sisters of Am., 944 F.Supp. 405, 407 (E.D. Pa. 1996)(citing Martin v. Nannie and the Newborns, Inc., 3 F.3d 1410, 1415 n. 6 (10th Cir. 1993)).  A plaintiff seeking to avail himself of the continuing violations doctrine must establish two elements: "(1) that at least one discriminatory act occurred within the 300 day filing period; and (2) that the harassment eclipses isolated events of intentional discrimination and constitutes an ongoing pattern of discrimination."  Elmarakaby v. Wyeth Pharm., Inc., No. 09-1784, 2015 WL 1456686, * 5 (E.D. Pa. Mar. 30, 2015).

Remp alleges that she was discriminated against on August 8, 2012 when she learned that Alcon had selected Wolf for another advancement opportunity.  This allegedly discriminatory act occurred within the statute of limitations and for purposes of evaluating whether the continuing violations doctrine applies to Remp's claim, I will permit this allegedly discriminatory act to fulfill the first prong of the continuing violations doctrine.  Remp argues that Alcon's August 2012 selection of Wolf for an interim assignment is part of an ongoing pattern of sex and age discrimination relating back to Alcon's denial of Remp's application for the planner/buyer position in January

8

2008; therefore, Remp states that Alcon's denial of her application for the planner/buyer position in January 2008 is not time-barred pursuant to the continuing violations doctrine.

I find that the discriminatory conduct that Remp cites to does not "eclipse[] isolated events of intentional discrimination and constitute[] an ongoing pattern of discrimination." Elmarakaby, 2015 WL 1456686, at * 5.  Although Remp claims that there is a subtle pattern of conduct which has been ongoing throughout her employment, she specifically points to only three incidents of allegedly discriminatory conduct: (1) the denial of her January 2008 bid for the Planner/Buyer position; (2) McQueen's August 2012 threats of a defamation lawsuit against her; and (3) Wolf's August 2012 advancement.   She otherwise provides only vague allegations and conclusory speculations that "[t]ime and time again, the employees chosen for the 'development opportunities' were male" and that Alcon "has simply cut [Remp] from access opportunities it freely awards to men . . . ." Doc. No. 51,[4] 8-9.   Moreover, without additional factual corroboration that the January 2008 denial was related to the August 2012 discriminatory acts, these three acts over the course of four years are not sufficient to constitute an ongoing pattern of discrimination.

Furthermore, it is well-accepted that discriminatory acts such as "termination, failure to promote, denial of transfer, or refusal to hire" are discrete acts which do not serve to invoke the continuing violations doctrine. National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002).  The denial of Remp's bid for the planner/buyer

---

[4] Plaintiff's Sur-Reply.

position in January 2008 is essentially a failure to promote claim which courts

consistently characterize as a discrete act rather than part of an ongoing pattern.  See

Taylor v. Brandywine Sch. Dist., 202 F. App'x 570, 575 (3d Cir. 2006)("[D]enial of a

promotion is generally a discrete event whose consequences are immediate and

permanent and require a prompt response under Title VII."). I find that Remp has not met

her burden in demonstrating that the continuing violations doctrine is applicable here.

Fusco v. Bucks Cnty. of Pa., No. 08-2082, 2009 WL 4911938, at *7 (E.D. Pa. Dec. 18,

2009)("The plaintiff bears the burden of demonstrating that the continuing violation

doctrine applies.").  Therefore, for the reasons stated above, the denial of Remp's bid for

the planner/buyer position in January 2008 does not invoke application of the continuing

violations doctrine but instead, is time-barred.

### B.   Title VII, ADEA and PHRA Claims

#### 1.   Sex Discrimination

Title VII makes it unlawful for an employer "to fail or refuse to hire or to

discharge any individual, or otherwise to discriminate against any individual with respect

to his compensation, terms, conditions, or privileges of employment, because of such

individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).

Given the above conclusion that the denial of Remp's bid for the planner/buyer position

in January 2008 is time-barred, the only other adverse action relevant to her sex

discrimination claim is Alcon's decision to assign Wolf to the sponge department in

August 2012 rather than Remp. On August 8, 2012, Remp learned that Alcon had

selected Wolf for an interim assignment supervising the sponge department.  Remp
characterizes this interim assignment as a "development opportunity" which is a "key[] to
advancement, both into higher levels of management, and in compensation, at Alcon."
Doc. No. 51, 3.  Remp states that no older, female applicants were offered or interviewed
for the interim assignment.  Rather, these "development opportunities" were filled with
"individuals who have been hand-picked by management without making applications or
bidding for the jobs."  Id. at 3.  At the time of his assignment, Wolf had been an
employee with Alcon for only four years whereas Remp had been an employee in good
standing for more than twenty years.  Remp states that these allegations evidence a *prima
facie* case of discrimination as "the fact remains that a decision was made not to even
afford experienced, qualified female employees the opportunity to bid on a job which
offered advancement opportunity."  Doc. No. 42,[5] 13.

The first and second prongs of Remp's *prima facie* case are not disputed.  Remp is
a woman and has been an employee in good standing with Alcon for the last twenty
years.  Instead, Alcon disputes that Remp has demonstrated that she suffered an adverse
employment action when Alcon assigned Wolf to the sponge department.  In Durham
Life Ins. Co. v. Evans, 166 F.3d 139, 152-53 (3d Cir. 1999), the Third Circuit defined
"adverse employment action," stating that:

> The Supreme Court has defined a tangible employment action
> as 'a significant change in employment status, such as hiring,
> firing, failing to promote, reassignment with significantly
> different responsibilities, or a decision causing a significant

---

[5] Plaintiff's Response.

> change in benefits. . . .Although direct economic harm is an
> important indicator of tangible adverse employment action, it
> is not the sine qua non.  If an employer's act substantially
> decreases an employee's earning potential and causes
> significant disruption in his or her working conditions, a
> tangible adverse employment action may be found.

Remp does not allege that Wolf's assignment resulted in her termination, suspension, demotion, denial of a requested promotion or reduction in her current compensation.   Therefore, under <u>Durham</u>, the relevant question is whether Alcon's decision to afford Wolf the interim assignment over Remp substantially decreased Remp's earning potential or caused significant disruption in her working conditions.  If Remp demonstrates that her work suffered or that her advancement or earning potential was affected then Remp will have provided sufficient evidence that she suffered an adverse employment action, thereby satisfying the third prong of her *prima facie* case.

Wolf's interim assignment did not include a promotion, change in title or additional compensation and Remp does not dispute this.  Rather, Remp argues that Wolf's assignment to the sponge department provided him with a competitive advantage over Remp by "open[ing] doors for future opportunities in management positions because you need to have supervisory experience."  Doc. No. 41[6], Ex. A., Remp Dep. 84:7-8. Despite her allegations, Remp has not provided any persuasive evidence to support the claim that by Wolf receiving the interim assignment, he was in a better position for career advancement or higher compensation than Remp.  Remp argues that the interim assignment provided its holder with supervisory experience which in turn would lead to

---

[6] Plaintiff's Response in Opposition.

greater career advancement.  Stevenson's deposition testimony reveals that Remp is

correct that the interim assignment would provide the person receiving it with increased

career advancement opportunity.  When asked about the advancement potential of the

interim assignment, Stevenson testified as follows:

> Q    The interim assignment would provide the person who obtained the interim
>
> assignment with supervisory experience; correct?
>
> A    Yes
>
> Q    And that supervisory experience would qualify them to move up higher on
>
> the ladder of pay grade at Alcon than somebody who doesn't have
>
> supervisory experience; correct?
>
> . . .
>
> A    Yes.
>
> Q    So this interim assignment had the potential to increase Mr. Wolf's ability
>
> to make money at Alcon; correct?
>
> A    Potentially, yes.
>
> . . .

Doc. No. 41, Ex. C., Stevenson Dep. 39:6-20.  Stevenson's deposition testimony reveals

that Wolf did benefit from receiving the interim position as he now had supervisory

experience.  Like Wolf, Remp admits that she also had supervisory experience and that

Alcon recognized her supervisory experience on her reviews.  Doc. No. 41, Ex. A., Remp

Dep. 84:5-15.   Although, Remp states that her supervisory experience held less weight in the defendant's eyes than that afforded by the interim assignment, Remp does not provide additional evidence demonstrating that this truly was Alcon's perception of Remp's supervisory experience.   In fact, when questioned regarding the respective weight given to Remp and Wolf's supervisory experience, Stevenson responded:

Q      Is Jeff now qualified to bid for jobs that Coleen is not qualified to bid for?

. . .

A      I would say no.

Q      You would say no despite having the interim assignment?

A      Correct.

. . .

Q      Does obtaining the interim assignment in August of 2012 provide Mr. Wolf with a better chance of obtaining a promotion to a supervisory position than Janine has?

. . .

Q      And the same thing would be true of Coleen; correct?

. . .

A      No.

Q        Because she had supervisory experience because she was supervising a

         temp?

A        Yes.

Doc. No. 41, Ex. C., Stevenson Dep. 41:15-43:3.  From Stevenson's deposition, it

appears that the interim assignment certainly did provide Wolf with supervisory

experience which in turn increased the likelihood of Wolf's future advancement but that

this was not at Remp's expense.  Remp has not presented any evidence beyond her own

speculation and beliefs to indicate that her chances of being moved into higher

management were decreased when Alcon gave the interim assignment to Wolf.  See

Huggins v. Teamsters Local 312, 585 F.Supp. 148, 150-51 (E.D. Pa. 1984)("[M]ere

inferences, conjecture, speculation or suspicion are insufficient to establish a material fact

upon which to base a denial of summary judgment.").

        Remp does not allege that the interim assignment provided any additional benefits

other than supervisory experience which might entitle its holder to future career

advancement or increased earning potential.  Additionally, Remp does not point to any

fact indicating that Wolf's appointment to the interim assignment caused a significant

disruption to her working conditions.  Accordingly, under Durham, I find that Remp has

not met her burden in demonstrating a *prima facie* case of discrimination because she has

failed to show that she suffered an adverse employment action.

        Even if Remp had been able to demonstrate a *prima facie* case of discrimination, I

would still grant summary judgment in favor of the defendant as they advanced a

legitimate nondiscriminatory reason for giving the interim assignment to Wolf and Remp has not met her burden in demonstrating that Alcon's legitimate nondiscriminatory reason was pretext for age or sex discrimination.  According to Stevenson, Wolf was selected for the interim assignment because Stevenson thought that was the best decision for the facility at the time as Wolf "had shown enough initiative" and the two other individuals, Janine Krzyzanowski and Remp, who Stevenson could consider for the assignment had never expressed any interest in being a Supervisor.  Doc. No. 41, Ex. C., Stevenson Dep. 25:1-14.  Under <u>McDonnell Douglas</u>, Remp can only survive summary judgment if she is able to "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." <u>Fuentes</u>, 32 F.3d at 764.  In other words, Remp can meet her burden of demonstrating pretext by showing "such weaknesses, implausibilities, inconsistencies, inchoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence."  <u>Id.</u> at 765 (noting that the plaintiff's burden at this stage is heavy)(citations omitted).

Remp provides no persuasive evidence that the defendant's legitimate nondiscriminatory reason is pretext for sex discrimination.  To the extent that Remp argues that Alcon did not consider any women for the position, did not evaluate Wolf's qualifications before offering him the interim assignment and ultimately, provided Mr.

Wolf with an advantage over other females, Stevenson has already testified to the fact that neither of the two female candidates who he could consider had expressed interest in the position.  In fact, when asked whether she had expressed any interest in a Supervisor position in the past, Remp acknowledges that prior to Mr. Wolf being selected for the interim assignment, she had never expressed interest in being a supervisor.  Doc. No. 41, Ex. A., Remp Dep. 97:21-24; 98:1-8.  Simply stated, Remp has not met her heavy pretextual burden because she has not provided any other evidence to suggest that the defendant's legitimate nondiscriminatory reason for selecting Wolf for the interim assignment was pretext for sex discrimination.  Therefore, even assuming *arguendo* that Remp was able to establish a *prima facie* case of sex discrimination, the defendant would still be entitled to summary judgment.  Accordingly, I will grant the defendant's motion for summary judgment on Remp's sex discrimination claims under Title VII and the PHRA.

### 2.    Age Discrimination

Under the ADEA, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  The PHRA provides:  "It shall be an unlawful discriminatory practice. . . [f]or any employer because of the . . .age. . . of any individual. . . to otherwise discriminate against such individual . . .with respect to compensation, hire, tenure. . .if the individual is the best, able and most competent to perform the

services requires."  43 Pa. Stat. Ann. § 955(a).  In order to demonstrate a *prima facie* case

of age discrimination, the plaintiff must show that: (1) she is forty years of age or older;

(2) she was qualified for the position at issue; (3) the employer took an adverse

employment action against her; and (4) she was replaced by an "employee who was

sufficiently younger to support an inference of discriminatory animus."  Smith v. City of

Allentown, 589 F.3d 684, 689 (3d Cir. 2009).  A plaintiff seeking to recover under the

ADEA is required to show that age discrimination was the "but for" cause of the adverse

action she suffered.  Kargbo v. Phila. Corp. for Aging, 16 F.Supp.3d 512, 521 (E.D. Pa.

2014).

Like her sex discrimination claim, the only relevant adverse action that Remp

alleges for purposes of her ADEA claim is Wolf's temporary assignment to the sponge

department in August 2012.  Under McDonnell Douglas, it is clear that Remp has

satisfied the first two prongs of her *prima facie* case.  She is over the age of forty and has

been an employee in good standing at Alcon for twenty years.  However, as I have

discussed above, Remp is unable to establish that she suffered an adverse employment

action based on Wolf's assignment to the sponge department alone and even if she had

been able to demonstrate a *prima facie* case, she has not presented sufficient evidence to

show that the defendant's legitimate nondiscriminatory reason for giving Wolf the

interim assignment was pretext for discrimination.  Accordingly, for the same reasons

that I found that the defendant was entitled to summary judgment on Remp's sex

discrimination claim, I also find that the defendant is entitled to summary judgment on Remp's age discrimination claim.

### 3.    Retaliation

Remp alleges that she suffered discriminatory retaliation in violation of Title VII, the ADEA and the PHRA after she made claims of sex and age discrimination to Alcon's management on August 17, 2012.  Retaliation claims under Title VII, the ADEA and the PHRA are all analyzed under the same framework.  See Preston v. Vanguard Group, Inc., No. 14-7243, 2015 WL 7717296, *9 n. 8 (E.D. Pa. Nov. 30, 2015)(citing Krouse v. American Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997)("Because the anti-retaliation provisions of the ADA and ADEA are nearly identical, as is the anti-retaliation provision of Title VII we have held that precedent interpreting any one of these statutes is equally relevant to interpretation of the others.")).  In order to establish a *prima facie* retaliation claim, a plaintiff must show that:  "(1) [she] engaged in protected activity; (2) after or contemporaneous with that protected activity, [she] was subject to a materially adverse employment action; and (3) a causal connection existed between the protected activity and the adverse employment action."  Martin v. Exelon Corp., No. 14-5749, 2016 WL 538240, *13 (Feb. 11, 2016)(citing Lebofsky v. City of Phila., 394 F. App'x 935, 938 (3d Cir. 2010)).  Unlike other provisions, the second prong of the *prima facie* retaliation case reaches more broadly to include not just "ultimate employment decisions" but also materially adverse actions which are "one[s] that well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  Nagle v. RMA, The Risk

Mgmt. Ass'n, 513 F.Supp.2d 383, 390 (E.D. Pa. 2007)(citing Burlington Northern &
Santa Fe Ry. v. White, 548 U.S. 53, 68 (2006)).

On August 17, 2012, Remp was called into a meeting with Stevenson and
McQueen to discuss her claims that older women at Alcon, herself included, were being
discriminated against.  When Remp told McQueen that she believed she was being
discriminated against, McQueen "basically with his hand said, you better be careful what
you say.  I'm going to call [the Business Practices Office] on you and then he also said to
me I'm going to also sue you for defamation of character."  Doc. No. 41, Ex. A., Remp
Dep. 142: 19-23.  Remp does not allege that following the August 17th meeting her pay
was docked, that she was demoted or that she was terminated.  Rather, her claim appears
to be that she suffered an adverse employment action because she believed she would be
subject to a defamation lawsuit if she pursued her claim of discrimination following the
August 17th meeting.

The defendant counters Remp's claim by arguing that McQueen's threats were
insufficient to demonstrate an adverse employment action because they lacked any real
consequences.  I agree.  Even if McQueen did make threats of bringing a defamation
lawsuit against Remp, the fact remains that "the threat was never carried out and had no
demonstrable impact on the plaintiff's employment."  Ilori v. Carnegie Mellon U., 742
F.Supp.2d 734, 760 (W.D. Pa. 2010)(holding that threat of termination did not rise to the
level of a materially adverse employment action because the threat lacked real
consequences); Nagle, 513 F.Supp.2d at 391 (concluding that the plaintiff failed to

establish a materially adverse employment action because a reasonable employee would not be dissuaded from "making a discrimination claim based on a single meeting with no evidence of further consequences to her resulting from that meeting); Hellman v. Weisberg, 360 F. App'x 776, 779 (9th Cir. 2009)(threats of termination and criminal prosecution did not constitute adverse employment actions to support a Title VII retaliation claim as the plaintiff was never fired or prosecuted).   After the August 17th meeting until the end of November 2012 when she filed her EEOC charge, Remp does not present evidence of any injury or harm that she suffered other than her own subjective belief that McQueen would bring a defamation suit against her.  Following the August 17th meeting, Remp had no further contact with McQueen and it does not appear that McQueen made any further threats or took any steps towards initiating a defamation lawsuit.  Doc. No. 41, Ex. A., Remp Dep. 171:16-19.  Even more indicative is the fact that Remp testified that approximately two to three weeks after the August 17th meeting she called the Business Practices Office ("BPO") and reported McQueen's threats.  Id. at 196:2-7.  Remp's testimony regarding the conversation with BPO was as follows:

Q      Okay.  And what did you tell that gentleman during that call?

A      I told him about my meeting with Ken Stevenson and Bill McQueen and told him about the threats that Bill McQueen said to me about him calling BPO on me and him going to sue me for defamation of character and the response by the BPO manager said – he said he has nothing.

Q      That was the gentleman that you were talking to?

21

A      Yes.  He said he has nothing as far as defamation of character.  He said you

       can say what you want.

Q      Okay.  So the gentleman that you spoke with from BPO told you not to

       worry about a defamation of character - -

A      By - -

Q      --allegation or suit from Mr. McQueen?

A      Yes.  By him saying he had nothing, I - -

Q      That's how you interpreted it?

A      Yes. Yes.

Id. at 199:20-24; 200:1-21.  As her own testimony reveals, Remp recognized that

McQueen's threat lacked any real consequence.  Even taking the facts in the light most

favorable to Remp, McQueen's threat of a defamation lawsuit is not one which "might

well might have dissuaded a reasonable worker from making or supporting a charge of

discrimination."  Burlington Northern, 548 U.S. at 68; Middleton v. Deblasis, 844

F.Supp.2d 556, 570 (E.D. Pa. 2011)("[C]omments cannot be retaliatory under Title VII

because statements, on their own, are not likely to deter a person of ordinary

firmness.")(citations omitted).  Accordingly, Remp has failed to establish that she

suffered a materially adverse employment action and cannot proceed past the *prima facie*

stage.  Therefore, I find that the defendant is entitled to summary judgment on Remp's

Title VII, ADEA and PHRA retaliation claims.

### C.    <u>Intentional Infliction of Emotional Distress</u>

The tort of intentional infliction of emotional distress ("IIED") is recognized in Pennsylvania, however, courts are generally cautious in permitting recovery under this tort. <u>Frankel v. Warwick Hotel</u>, 881 F.Supp. 183, 187 (E.D. Pa. 1995). Recovery for IIED is limited to those circumstances in which the defendant acted in a manner "so extreme in nature as to go beyond all possible bounds of decency such that it would be regarded as utterly intolerable to civilized society." <u>Regan v. Twp. of Lower Merion</u>, 36 F.Supp.2d 245, 251 (E.D. Pa. 1999)(citing <u>Mulgrew v. Sears Roebuck & Co.</u>, 868 F.Supp. 98, 103 (E.D. Pa. 1994)). A plaintiff alleging an IIED claim must establish that the defendant's conduct was: "(1) extreme and outrageous; (2) intentional or reckless; and (3) the cause of severe or emotional distress to the plaintiff." <u>Denithrone v. Ingernie</u>, No. 15-5220, 2016 WL 724941, *3 (E.D. Pa. Feb. 24, 2016)(citing <u>Manley v. Fitzgerald</u>, 997 A.2d 1235, 1241 (Pa. Commw. Ct. 2010)). Under Pennsylvania law, a plaintiff also must demonstrate that she suffered some type of "physical injury, harm or illness related to the distress." <u>Connearney v. Main Line Hospitals, Inc.</u>, No. 15-2730, 2015 WL 9302912, *7 (E.D. Pa. Dec. 22, 2015). Consequently, it is "extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." <u>Nayak v. Voith Turbo, Inc.</u>, No. 14-1053, 2016 WL 860664, *3 (M.D. Pa. Mar. 7, 2016)(citing <u>Cox v. Keystone Carbon Co.</u>, 861 F.2d 390, 395 (3d Cir. 1988)).

Remp's IIED claim is premised on the statements which were made to her by McQueen during their August 17th meeting.  According to Remp, she was "subjected to brutal insults and threats, including the threat that Alcon would file a frivolous defamation action against her (personally) in outrageous retaliation for making reasonable complaints of admitted sex discrimination."  Doc. No. 42, 7.  This "threat of legal action against Remp [was] not only absurd, it [was] also extreme, outside the norms of our society, and was clearly calculated to cause emotional distress."  Id. at 8.  The defendant claims that Remp's IIED claim is preempted by the Pennsylvania Worker's Compensation Act, lacks sufficient medical evidence and fails to rise to the level of extreme and outrageous conduct.  Because I find that Remp's allegations do not rise to the level of extreme and outrageous conduct, I need not address the first two of the defendant's arguments.

Even regarded in the light most favorable to Remp, Remp has not demonstrated that McQueen's threat of a lawsuit and other statements made during her August 17th meeting are sufficiently extreme and outrageous to support an IIED claim.  See Connearney, 2015 WL 9302912 at *7 ("Only the most clearly desperate and ultra extreme conduct will support an IIED claim under Pennsylvania law."); Rorrer v. Cleveland Steel Container, 712 F.Supp.2d 422, 439 (E.D. Pa. 2010)("Push[ing] a utility knife into [female employee's] breast" not sufficient "to support a claim for intentional infliction of emotional distress); Jafar v. Wells Fargo Bank, N.A., No. 14-6411,  2015 WL 1781703, *3 (E.D. Pa. Apr. 15, 2015)(dismissing IIED claim where the plaintiff

alleged that her supervisory made derogatory comments about her religious beliefs and ethnic background and mocked her alleged disability); Imboden v. Chowns Communications, 182 F.Supp.2d 453, 457 (E.D. Pa. 2002)("Indeed, the only instances in which courts applying Pennsylvania law have found conduct outrageous in the employment context is where an employer engaged in both sexual harassment and other retaliatory behavior against an employee.").  The conduct of which Remp complains simply does not "go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society."  Regan, 36 F.Supp.2d at 251. Moreover, Remp has failed to present any evidence that she suffered any physical harm or physical manifestation of her emotional distress as the result of McQueen's threats. Accordingly, I find that there is no genuine issue of material fact and the defendant is entitled to judgment as a matter of law on Remp's IIED claim.

## IV.    CONCLUSION

Upon examination of the record, I find that Remp has not established a *prima facie* case of age or sex discrimination because she has not demonstrated that she suffered an adverse employment action.  Moreover, even if Remp had been successful in establishing a *prima facie* case, the defendant offered a legitimate nondiscriminatory reason and Remp has not met her burden in providing sufficient evidence of pretext.  Similarly, Remp did not establish that she suffered an adverse employment action for her retaliation claim to proceed past the *prima facie* stage.  Finally, as a matter of law, Remp has not alleged conduct from Alcon that was extreme and outrageous as would allow her

intentional infliction of emotional distress claim to survive summary judgment.  For the reasons I have discussed above, I am granting the defendant's motion for summary judgment.

An appropriate Order follows.